**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

ARLENE M. BUTLER,

                        Plaintiff,

     - v -                                           Civ. No. 6:03-CV-491
                                                        (NAM/RFT)

MICHAEL J. ASTRUE, Commissioner of Social
Security,[1]

                        Defendant.

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| OFFICE OF WAYNE M. CHARIFF<br>Attorney for Plaintiff<br>19 Chenango Street<br>1204 Press Building<br>Binghamton, NY 13901 | WAYNE M. CHARIFF, ESQ. |
| HON. GLENN T. SUDDABY<br>United States Attorney for the<br>Northern District of New York<br>Attorney for Defendant<br>P.O. Box 7198<br>100 South Clinton Street<br>Syracuse, NY 13261 | WILLIAM H. PEASE<br>Assistant United States Attorney |

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

### REPORT-RECOMMENDATION and ORDER[2]

      In this action, Plaintiff Arlene M. Butler moves, pursuant to 42 U.S.C. § 405(g), for review of a decision by the Commissioner of Social Security denying her application for Supplemental Security Income (SSI). Based upon the following discussion, this Court recommends that the Commissioner's decision denying Social Security benefits be **affirmed**.

---

[1] Michael J. Astrue became Commissioner of Social Security on February 12, 2007. Pursuant to Federal Rule of Civil Procedure 25(d)(1), Michael J. Astrue is substituted as the Defendant in this suit.

[2] This case has proceeded in accordance with General Order 18 which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed Briefs, though oral argument was not heard. Dkt. Nos. 8 & 13. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

## I. BACKGROUND

Plaintiff was born on November 23, 1967, and was thirty-four years old at the time the Administrative Law Judge (ALJ) rendered his decision on her claim for disability benefits. Dkt. No. 3, Admin. Transcript [hereinafter "Tr."] at pp. 12 & 63. Plaintiff received her General Education Development (GED) diploma but did not attend college. *Id.* at pp. 12 & 90. Plaintiff's past work experiences include being a housekeeper in a museum, a laundry person, and a nurse's aide. *Id.* at pp. 12 & 85. Generally, Butler alleges she is disabled due to hypothyroidism, depression, and anxiety and claims that such impairments impeded her ability to work as of August 24, 2000. *Id.* at pp. 12, 84, & 97-101.

The medical record consists of treatment reports and opinions from various treating, examining, and/or consulting physicians, including, 1) Michele Boyle, M..D., Treating Physician; 2) Mary Ann Moore, Psy. D., Consultive Examiner; 3) Kathryn M. Jones, State Agency Consultive Examiner; 4) Ed Kamin, Ph.D., State Agency Review Psychologist; 5) Jerome Blumenthal, M.D., Treating Psychiatrist; and 6) Bal M. Nemani, M.D., Treating Psychiatrist. *Id.* at pp. 126-233. The following is a summary of the relevant medical evidence.

On August 9, 1999, Plaintiff was examined by Dr. Michele Boyle who diagnosed Butler with hypothyroidism, depression, and obesity. *Id.* at p. 137. Dr. Boyle told Plaintiff to continue taking Prozac for her depression, as well as her thyroid medication, and encouraged her to lose some weight. *Id.* The Prozac dosage was later increased on October 26, 1999, after Plaintiff's father passed away. *Id.* at p. 136. By November 30, 1999, Plaintiff reported she discontinued taking Prozac because it made her feel tired; as an alternative, Dr. Boyle prescribed Celexa. *Id.* at p. 135. On January 27, 2000, Dr. Boyle found that Plaintiff's depression had improved with Celexa as Plaintiff reported she slept well,

worked three days a week, and got out of the house more. *Id.* at p. 133. Subsequently, on May 24, 2000, after Butler indicated she felt more depressed, Dr. Boyle increased the Celexa dosage. *Id.* at p. 132. Then, on June 27, 2000, Plaintiff told Dr. Boyle that she ceased taking Celexa because she was feeling better. *Id.* at p. 131. Notwithstanding, by October 30, 2000, Dr. Boyle had prescribed Paxil for Butler's depression and noted it was having a positive effect on Plaintiff. *Id.* at p. 128. On January 9, 2001, Dr. Boyle continued Butler's Paxil prescription for her anxiety and depression and, on March 14, 2001, Dr. Boyle indicated that Plaintiff's depression seemed somewhat improved due to the Paxil. *Id.* at p. 126.

Shortly thereafter, on March 19, 2001, Dr. Mary Ann Moore conducted a psychiatric evaluation. *Id.* at pp. 148-52. Dr. Moore noted that Plaintiff drove herself to the evaluation unaccompanied, had never been psychiatrically hospitalized, and due to her mood swings was not currently working. *Id.* at p. 148. Plaintiff reported occasional difficulty sleeping and mood swings, though the Paxil was helping with the latter. *Id.* at pp. 148-49. Plaintiff expressed to Dr. Moore that she could cook, clean, do the laundry, drive, and get her kids off to school. *Id.* at pp. 150-51. Dr. Moore assessed that Plaintiff could follow and understand simple directions and instructions, perform simple rote tasks under supervision, and consistently perform simple tasks. *Id.* at p. 151. She further opined Plaintiff could maintain attention and concentration for tasks and learn new tasks, though she opined that Butler had anxiety and some difficulty making appropriate decisions and dealing with stress. *Id.* Dr. Moore diagnosed Plaintiff as having major depressive disorder without psychotic features, generalized anxiety disorder, panic disorder (without agoraphobia), hypothyroidism, asthma, and migraines. *Id.* at p. 151. Dr. Moore recommended Plaintiff remain on Paxil and stated her prognosis was fair. *Id.* at pp. 151-52.

After filing her claim for disability, two State Agency Consultive, Non-Examining Physicians

prepared medical assessments. In regards to the hypothyroidism, Kathryn M. Jones, State Agency Consultive Examiner, completed a Physical Residual Functional Capacity Assessment in May 2001 and found Plaintiff did not suffer from any exertional, postural, manipulative, visual, communicative, nor environmental limitations. *Id.* at pp. 153-59. On June 1, 2001, Dr. Ed Kamin, State Agency Review Psychologist, prepared a Mental Residual Functional Capacity Assessment relating to Plaintiff's depression. *Id.* at pp. 160-62. Dr. Kamin found Plaintiff to be moderately limited in the following areas: 1) the ability to understand and remember detailed instructions; 2) the ability to carry out detailed instructions; 3) the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms; and 4) the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. *Id.* at pp. 160-61. Plaintiff was not significantly limited in any of the other categories. *Id.* Dr. Kamin also completed a Psychiatric Review Technique form and, based on Listing § 12.04, affective disorders, Dr. Kamin found Plaintiff was mildly limited in the following areas: activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. *Id.* at p. 173. However, there were no episodes of deterioration. *Id.*

On August 1, 2001, Dr. Jerome Blumenthal, a treating psychiatrist, evaluated Plaintiff. *Id.* at pp. 177-81. Dr. Blumenthal listed Plaintiff's symptomatology as being short tempered, irritable, sleeping all the time, and could not stop crying. *Id.* at p. 177. He found Plaintiff's prognosis to be guarded. *Id.* at p. 178. In assessing Butler's ability to do work related activities, Dr. Blumenthal found Plaintiff was 1) unlimited in her ability to follow work rules; 2) good in her ability to use judgment, understand, remember and carry out complex, detailed, and simple job instructions, and in maintaining her appearance; 3) fair in her ability to relate to co-workers, interact with supervisors, and relate

predictably in social situations; and 4) poor in her ability to deal with the public, deal with work stress, function independently, maintain attention/concentration, behave in an emotionally stable manner, and demonstrate reliability.  *Id.* at pp. 179-80.  Dr. Blumenthal further noted that Butler was capable of managing benefits in her own interest.  *Id.* at p. 181.

On October 8, 2001, after Dr. Blumenthal retired, Dr. Boyle referred Plaintiff to Dr. Bal M. Nemani for a psychiatric assessment.  *Id.* at pp. 219-22.  Dr. Nemani indicated that though Plaintiff had some anxiety, her emotional reaction was fair and appropriate.  *Id.* at p. 221.  Dr. Nemani diagnosed Plaintiff as having a borderline personality disorder with some tendency for bipolar disorder, "mixed to be ruled out," and prescribed Effexor and Neurontin.  *Id.* at p. 222.  Dr. Nemani further indicated Plaintiff had a Global Assessment of Functioning (GAF) score of 50.[3]  Plaintiff was again examined by Dr. Nemani on January 11, 2002.  *Id.* at p. 217.  Dr. Nemani stated Plaintiff was stabilizing and that she should continue psychotherapy.  *Id.*

On February 2, 2002, Dr. Blumenthal completed a Medical Source Statement based upon his recollection of their last visit on August 1, 2001.  *Id.* at pp. 183-93.  He found Plaintiff had no limitations in her ability to 1) understand, remember, and carry out short and detailed instructions, 2) make judgments on simple work-related decisions, 3) interact appropriately with the public, and 4) respond appropriately to changes in a routine work setting.  *Id.* at pp. 183-84.  Dr. Blumenthal did

---

[3] The Diagnostic and Statistical Manual (DSM) multiaxial scale assesses an individual's mental and physical condition on five axes, each of which refers to a different class of information that may help the clinician plan treatment and predict outcome.  Axis I refers to clinical syndromes, Axis II refers to developmental and personality disorders, Axis III refers to general physical disorders and conditions, Axis IV refers to the severity of psychosocial and environmental stressors, and Axis V cites the individuals' global assessment of functioning (GAF) on a scale of 0 to 100.  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 27 & 34 (4th ed–text rev. 2000).
    The GAF scale indicates the clinician's overall judgment of a person's level of psychological, social, and occupational functioning.  A GAF of 41 to 50 means that an individual has serious symptoms or any serious impairment in social, occupational, or school functioning.  *Id*. at 34.

indicate, however, that Plaintiff had slight limitations in her ability to interact appropriately with supervisors and co-workers and was moderately limited in her ability to respond appropriately to work pressures in a usual work setting. *Id.* at p. 184.

Subsequently, on July 29, 2002, Dr. Nemani completed a medical impairment assessment and found Plaintiff had no limitations in the area of activities of daily living, slight limitations in maintaining social functioning, she often had deficiencies in concentration, persistence, or pace, and on one or two occasions she had an episode of deterioration or decompensation.[4] *Id.* at pp. 223-27. On August 22, 2002, Dr. Boyle also completed a medical impairment assessment form and indicated Plaintiff had a slight limitation in activities of daily living, moderate limitations in maintaining social functioning, she often had deficiencies in concentration, persistence, or pace, and on one or two occasions she had an episode of deterioration or decompensation. *Id.* at pp. 229-33. Several times on this form, Dr. Boyle issued no opinion nor assessment and instead stated "please refer to Dr. Nemani." *Id.* at pp. 230-32.

### B. Procedural History

On January 3, 2001, Butler protectively filed for SSI benefits alleging a disability onset date of August 24, 2000. Tr. at pp. 62-68. The application was denied initially.[5] *Id.* at pp. 30-33. On August 12, 2002,[6] a hearing was held before Administrative Law Judge (ALJ) Joseph Hillegas (*Id.* at pp. 235-269), and on September 26, 2002, the ALJ issued an unfavorable decision against Butler (*Id.* at pp. 11-

---

[4] Decompensation refers to the "failure of defense mechanisms resulting in the progressive personality disintegration." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 432 (28th ed. 1994).

[5] Defendant informs the Court that this case was part of a "Disability Redesign Prototype Case claim" and thus, the reconsideration stage was eliminated. Dkt. No. 13, Def.'s Br. at p. 2, n.1 (citing Tr. at p. 29).

[6] A Hearing was initially held on April 19, 2002, before ALJ Pochnowski, but was adjourned to allow Butler more time to secure representation. Tr. at pp. 20-28.

17). On February 14, 2003, the Appeals Council concluded there was no basis under the Regulations to grant Plaintiff's request for review, thus rendering the ALJ's decision the final determination of the Commissioner. *Id.* at pp. 3-4. Exhausting all her options for review through the Social Security Administration's tribunals, Plaintiff now brings this appeal.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), the proper standard of review for this Court is not to employ a *de novo* review, but rather to discern whether substantial evidence supports the Commissioner's findings and that the correct legal standards have been applied. *See Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *Urtz v. Callahan*, 965 F. Supp. 324, 325-26 (N.D.N.Y. 1997) (citing, *inter alia*, *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). Succinctly defined, substantial evidence is "more than a mere scintilla," it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

The ALJ must set forth the crucial factors supporting the decision with sufficient specificity. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). Where the ALJ's findings are supported by substantial evidence, the court may not interject its interpretation of the administrative record. *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); 42 U.S.C. § 405(g). Where the weight of the evidence, however, does not meet the requirement for substantial evidence or a reasonable basis for doubt exists as to whether correct legal principles were applied, the ALJ's decision may not be affirmed. *Johnson v. Bowen*, 817 F.2d at 986.

### B. Determination of Disability

To be considered disabled within the meaning of the Social Security Act, a plaintiff must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore, the claimant's physical or mental impairments must be of such severity as to prevent engagement in any kind of substantial gainful work which exists in the national economy. *Id*. at § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner follows a five-step analysis set forth in the Social Security Administration Regulations. 20 C.F.R. § 416.920. At Step One, the Commissioner "considers whether the claimant is currently engaged in gainful activity." *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). If the claimant is engaged in substantial gainful activity, he or she is not disabled and the inquiry ends. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to Step Two and assesses whether the claimant suffers from a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c). If the claimant suffers from a severe impairment, the Commissioner considers at Step Three whether such impairment(s) meets or equals an impairment listed in Appendix 1, in Part 404, Subpart P of the Regulations. *Id*. at § 416.920(d). The Commissioner makes this assessment without considering vocational factors such as age, education, and work experience. *Berry v. Schweiker*, 675 F.2d at 467. Where the claimant has such an impairment the inquiry ceases as he or she is presumed to be disabled and unable to perform substantial gainful activity. *Id*. If the claimant's impairment(s) does not meet or equal the listed impairments, the Commissioner proceeds to Step Four

and considers whether the claimant has the residual functional capacity (RFC)[7] to perform his or her past relevant work despite the existence of severe impairments. 20 C.F.R. § 416.920(e). If the claimant cannot perform his or her past work, then at Step Five, the Commissioner considers whether the claimant can perform any other work available in the national economy. *Berry v. Schweiker*, 675 F.2d at 467; 20 C.F.R. § 416.920(f).

Initially, the burden of proof lies with the claimant to show that his or her impairment(s) prevents a return to previous employment (Steps One through Four). *Berry v. Schweiker*, 675 F.2d at 467. If the claimant meets that burden, the burden then shifts to the Commissioner at Step Five to establish, with specific reference to medical evidence, that the claimant's physical and/or mental impairment(s) are not of such severity as to prevent him or her from performing work that is available within the national economy. *Id.*; 42 U.S.C. § 423(d)(2)(A); *see also White v. Sec'y of Health and Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990). In making this showing at Step Five, the claimant's RFC must be considered along with other vocational factors such as age, education, past work experience, and transferability of skills. 20 C.F.R. § 416.920(f); *see also New York v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990).

### C. ALJ Hillegas' Findings

Plaintiff, her husband, and a vocational expert testified at the Hearing. Tr. at 235-69. In addition to such testimony, the ALJ had Butler's medical records. Using the five-step disability evaluation, ALJ Hillegas found that 1) Butler had not engaged in any substantial gainful activity since August 24, 2000, the alleged onset disability date; 2) she has a severe medically determinable

---

[7] "Residual functional capacity" is defined by the Regulations as follows: "Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is what you can still do despite your limitations." 20 C.F.R. § 416.945(a).

impairment or combination of impairments, namely depression, anxiety, and migraine headaches; 3) her severe impairments do not meet nor medically equal any of the impairments listed in Appendix 1, Subpart P of Social Security Regulation No. 4; and 4) she has a residual functional capacity to perform light work and therefore, can perform her past relevant work as a housekeeper. *Id.* at pp. 11-17. After reviewing the administrative transcript, the Court finds that the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record.

### D.  Butler's Contentions

In seeking federal judicial review of the Commissioner's decision denying her benefits, Butler only asks the Court to review the ALJ's Step Four determination that she is able to perform her past relevant work as a housekeeper. In support of her attack of the ALJ's Step Four determination, Plaintiff asserts that (1) the ALJ did not accord proper weight to her treating physicians' opinions and therefore misapplied the Treating Physician's Rule; (2) the ALJ's assessment of her credibility was contrary to Social Security Regulations; (3) her past work as a housekeeper was not sufficiently long enough to be considered past relevant work; and (4) the ALJ failed to set forth the mental demands of her past relevant work. *See* Dkt. No. 8, Pl.'s Br. As explained fully below, the Court finds that the ALJ applied the correct legal standards and substantial evidence supports his finding that Butler is capable of performing her past relevant work and therefore is not disabled.

Under Step Four of the disability analysis, the Commissioner assesses a claimant's RFC as a basis for determining the particular types of work the claimant could perform despite the existence of physical and/or mental impairments. *See* 20 C.F.R. § 416.945(a). If the applicant can still perform the kind of work she performed in the past, she is deemed not disabled. *Id.* at § 416.920(e). In determining RFC, the ALJ can consider a variety of factors including a treating and/or examining physician's

observations of the claimant's limitations, the claimant's subjective allegations of symptoms, physical and mental abilities, as well as the limiting effects of all impairments even those not deemed severe. *Id*. at § 416.945(a).

In the case at bar, the ALJ found that though Butler did not suffer from any exertional limitations, she did suffer from non-exertional limitations.[8] Tr. at p. 16. Specifically, in assessing Butler's RFC, the ALJ stated:

> The evidence of record supports a finding that the claimant has no exertional limitations. As to her mental impairment limitations, considering the entire record, the Administrative Law Judge concludes that the claimant has . . . no restriction in her ability to perform her daily activities; a slight restriction in social functioning; and seldom has difficulties in her ability to maintain concentration, persistence or pace as a result of her mental impairment.

*Id*.

Plaintiff asserts that in rendering this RFC assessment, the ALJ failed to accord proper weight to her treating physicians' opinions as well as to her subjective complaints of the disabling effects of her impairments and symptomatology.

### 1. Treating Physician Rule

Under the Regulations, a treating physician's opinion as to the nature and severity of a claimant's impairment is entitled to "controlling weight" when it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. § 416.927(d)(2); *see also Rosa v. Callahan*, 168 F.3d 72, 78-

---

[8] Exertional limitations refer to restrictions imposed by a claimant's impairment(s) that affect the ability to meet strength demands of a job such as sitting, standing, walking, lifting, carrying, pushing, and pulling. 20 C.F.R. § 416.969a(b). Non-exertional limitations refer to limitations affecting the claimant's ability to meet the requirements of a job other than strength demands. *Id*. at § 416.969a(c). This includes, *inter alia*, limitations or restrictions in functioning due to nervousness, anxiety or depression, maintaining attention or concentration, understanding or remembering detailed instructions, and performing manipulative or postural functions such as reaching, handling, stooping, climbing, crawling, or crouching. *Id*.; *see also* S.S.R. 83-14, 1983 WL 31254, at * 1, *Program Policy Statement–Titles II and XVI: Capability to do Other Work – The Medical Vocational Rules as a Framework for Evaluating a Combination of Exertional and Non-exertional Impairments* (S.S.A. 1983).

79 (2d Cir. 1999).[9] However, "[a] treating physician's statement that the claimant is disabled cannot itself be determinative." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *see also* 20 C.F.R. § 416.927(e)(1) (Commissioner provides the ultimate decision on disability). The Treating Physician Doctrine recognizes that a claimant's treating sources, which in most cases are medical professionals, are more apt to "provide a detailed, longitudinal picture of [the patient's] medical impairment(s) and may bring a unique perspective to the medical findings" as opposed to an evaluation of a one-time non-examining, non-treating physician. 20 C.F.R. § 416.927(d)(2); *see Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993).

In analyzing a treating physician's opinion, "the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion." *McBrayer v. Sec'y of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983); *see also Balsamo v. Chater*, 142 F.3d 75, 80-81 (2d Cir. 1998). Furthermore, when weighing all medical opinions and assessing what weight to allot, "[t]he duration of a patient-physician relationship, the reasoning accompanying the opinion, the opinion's consistency with other evidence, and the physician's specialization or lack thereof" are considerations. *Schisler v. Sullivan*, 3 F.3d at 568; 20 C.F.R. § 416.927(d)(1)-(6); *see also Schaal v. Apfel*, 134 F.3d 496 (2d Cir. 1998). In the event the ALJ does not give controlling weight to the treating physician, he must specifically state the reasons for doing so. 20 C.F.R. § 416.927(d)(2).

In assessing the effects of Plaintiff's mental impairments, the ALJ recounted the medical opinions rendered by Butler's treating psychiatrists, Drs. Blumenthal and Nemani, and accorded such opinions "substantial weight." Tr. at pp. 15-16. The ALJ's RFC assessment is consistent with these

---

[9] A "treating physician" is the claimant's "own physician, osteopath or psychologist (including outpatient clinic and health maintenance organization) who has provided the individual with medical treatment or evaluation, and who has or had an ongoing treatment and physician-patient relationship with the individual." *Jones v. Apfel*, 66 F. Supp. 2d 518, 524-25 (S.D.N.Y. 1999) (quoting *Schisler v. Bowen*, 851 F.2d 43, 46 (2d Cir. 1988)).

opinions.

In a Medical Report, dated August 1, 2001, Dr. Blumenthal assessed Butler's ability to do work-related activities and reported that Plaintiff had no limitations in her ability to (1) understand, remember, and carry out short and detailed instructions, (2) make judgments regarding simple work-related decisions, (3) interact appropriately with the public, and (4) respond appropriately to changes in a routine work setting. *Id*. at pp. 183-84. Dr. Blumenthal further opined Plaintiff had slight limitations in her ability to interact appropriately with supervisors and co-workers and was moderately limited in her ability to respond appropriately to work pressures in a usual work setting. *Id*. In another assessment, Dr. Blumenthal opined that Plaintiff was (1) unlimited in her ability to follow work rules; (2) good in her ability to use judgment, understand, remember and carry out complex, detailed, and simple instructions; (3) fair in her ability to relate to co-workers, interact with supervisors, and relate predictably in social situations; and (4) poor in her ability to deal with the public, deal with work stress, function independently, maintain attention/concentration, behave in an emotionally stable manner, and demonstrate reliability. *Id.* at pp. 179-80.

Dr. Nemani also provided a Medical Report regarding Butler's ability to perform work related activities, finding Plaintiff (1) was not limited in activities of daily living, (2) had slight limitation in maintaining social functioning, (3) often had deficiencies in concentration, persistence, or pace, and (4) on one or two occasions had an episode of deterioration or decompensation. *Id.* at pp. 223-27.[10]

---

[10] Additionally, the Administrative Record contains medical assessments from Drs. Moore and Kamin. The ALJ did not assign any weight to these assessments, though the opinions appear to be in line with that of Plaintiff's treating psychiatrists. *Id.*. Dr. Moore assessed that Plaintiff could (1) follow and understand simple directions and instructions, (2) perform simple rote tasks under supervision, (3) consistently perform simple tasks, and (4) maintain attention and concentration for tasks and learn new tasks. *Id.* at p. 151. Dr. Kamin found Plaintiff (1) was moderately limited in her ability to understand, remember, and carry out detailed instructions, (2) could complete a normal workday and workweek without interruptions from psychological symptoms, and (3) could get along with coworkers or peers without distracting them or exhibiting behavioral extremes. *Id.* at pp. 160-61. Dr. Kamin opined Plaintiff was not significantly limited in several other categories, too numerous to list herein. *Id.* In assessing Butler's functional limitation, Dr. Kamin determined

Dr. Nemani further opined that Butler's impairments would cause her to miss work an average of twice per month. *Id*. at p. 225.

Finally, the ALJ had a Medical Report from Dr. Boyle, Plaintiff's treating physician, for which little weight was assigned as the ALJ determined such opinion was inconsistent with Butler's treating psychiatrist's assessments. *Id.* at p. 14. The ALJ further noted that Dr. Boyle is a general practitioner while Dr. Nemani is a board certified psychiatrist and therefore better qualified to assess limitations arising from Butler's mental impairment. *Id*.; *see also* 20 C.F.R. § 416.927(d)(5) (noting that more weight will be given to the opinion of a specialist when medical issues are related to his or her field). Notably, in filling out the Medical Questionnaire, there were several instances wherein Dr. Boyle did not provide an opinion and instead stated "please refer to Dr. Nemani."

In light of the above, we find that the ALJ applied the appropriate weight to be given to each of Plaintiff's treating physicians and rendered an RFC consistent with such opinions. Furthermore, the ALJ properly explained his reasons for assigning the weight to the various opinions.

### 2. *Plaintiff's Credibility*

In terms of Plaintiff's subjective account of the limiting effects of her impairments, the ALJ stated that

> [t]he claimant's statements concerning her impairments and their impact on her ability to work are not entirely credible in light of the claimant's own description of her activities and life style; the degree of medical treatment required; discrepancies between the claimant's assertion and information contained in the documentary reports; the claimant's demeanor at [the] hearing; the reports of the treating and examining practitioners; the medical history; the findings made on examination; [and] the claimant's assertions concerning her ability to work.

Tr. at p. 15.

---

Plaintiff was mildly limited in (1) activities of daily living, (2) maintaining social functioning, and (3) maintaining concentration, persistence, or pace, but there were no episodes of deterioration. *Id.* at p. 173.

In evaluating a claimant's credibility regarding how symptoms impair activities of daily living, the Regulations set forth a two-step process. *See* 20 C.F.R. § 416.929 (cited in *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 205-06 (W.D.N.Y. 2005)). First, "the ALJ must consider whether the claimant has a medically determinable [physical or mental] impairment which could reasonably be expected to produce the pain or symptoms alleged by the claimant." *Matejka v. Barnhart*, 386 F. Supp. 2d at 205; *Foster v. Callahan*, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998). If an impairment is shown, then "the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activity." *Foster v. Callahan*, 1998 WL 106231, at *5; *see also Matejka v. Barnhart*, 386 F. Supp. 2d at 205. If the claimant's statements regarding his or her symptoms are not corroborated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility. *Matejka v. Barnhart*, 386 F. Supp. 2d at 205; *Foster v. Callahan*, 1998 WL 106231, at *5. In assessing the claimant's credibility, the ALJ is to consider all of the evidence in the record as well as several factors set forth in 20 C.F.R. § 416.929(c), which include:

>   (i)    [The claimant's] daily activities;
>   (ii)   The location, duration, frequency, and intensity of [claimant's] pain or other symptoms;
>   (iii)  Precipitating and aggravating factors;
>   (iv)   The type, dosage, effectiveness, and side effects of any medication [claimant] take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms;
>   (v)    Treatment, other than medication, [claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms;
>   (vi)   Any measures [claimant] use[s] or ha[s] used to relieve [his or her] pain or other symptoms (e.g., lying flat on [his or her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>   (vii)  Other factors concerning [claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c); *see also Foster v. Callahan*, 1998 WL 106231, at *5-6.

Here, though a medically determinable impairment exists, the ALJ did not find Plaintiff's

testimony regarding the limiting effects of her impairment entirely credible. Tr. at p. 15. Plaintiff testified that on her good days, which was usually one or two days a week, she could cook, do the dishes, laundry, vacuum, go grocery shopping, and drive. *Id.* at pp. 245-47. She also stated she goes to a church service every week that lasts about forty-five minutes, but she rarely visits her friends and relatives. *Id.* at p. 247. These statements, however, are contradicted by Plaintiff's paperwork accompanying her application for benefits wherein she indicated that in her household, which includes her husband and four kids,[11] she cooked daily and shopped weekly, with her husband helping occasionally. *Id.* at p. 105. She also indicated on these forms that she, along with others in the household, performed weekly chores such as laundry, dusting, vacuuming, and mopping and she spends her days reading, going to church, watching television, and helping her kids with their homework. *Id*. Additionally, on the form, Butler noted she visits with friends and relatives daily, handles all her bills, and drives short distances by herself amounting to ten miles per week. *Id*. at pp. 105-06.

As the ALJ noted, Butler's testimony was not only contradicted by her own recitation of her daily activities, but also by her treating psychiatrists' estimations of her ability to perform daily activities for which it was determined she had no restrictions. And, as set forth above, Butler's treating psychiatrists unanimously opined that her other abilities were not significantly affected by her impairment. In terms of treatment, Plaintiff testified that she only sees her psychiatrist once a month and was not seeing a therapist. *Id.* at p. 248. When asked why she felt she could not work a low-stress job, she retorted it would be difficult because she was always tired and slept most of the day. *Id.* at p. 253. Yet, when questioned about her work experience and the reasons for leaving her prior

---

[11] Butler testified that she lived with her husband and four children whose ages, at the time of the Hearing, ranged from eleven to eighteen, and that each child had a pet for which he or she was responsible; the various pets in the household include a dog, two cats, a rabbit, two birds, and a guinea pig. Tr. at pp. 240 & 251.

employment, Butler explained she left her job as a nurse's aid because she couldn't handle it, she left the laundry job where she worked ten hours per week because the repetitiveness drove her crazy, and she left her housekeeping job also due to repetitiveness and because she had "ups and downs." *Id.* at pp. 243-45.

Taking into account the objective medical evidence, including the opinions of the treating psychiatrists and consultive examiner, the Plaintiff's prior inconsistent statements, and the relatively conservative nature of treatment prescribed, we find that the ALJ properly assessed Plaintiff's testimonial credibility and sufficiently referred to substantial evidence demonstrating that Plaintiff's subjective statements regarding the limiting effects of her impairments were not fully credible.

### 3. *Past Relevant Work*

Lastly, Plaintiff asserts that her past work as a housekeeper should not have been considered by the ALJ because such employment was not of significant duration to qualify as past relevant work. She also asserts the ALJ erred when he failed to enumerate the mental demands of her past work. *See* Dkt. No. 8, Pl.'s Br.

According to the Regulations, past relevant work is defined as work the claimant performed "within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. §§ 416.960(a) & 416.965(a). According to Butler's disability application and testimony, Butler worked as a housekeeper in a museum from 1999 through 2000. Tr. at pp. 85 & 244-45. In that capacity, she cleaned bathrooms, mopped floors, washed windows, collected garbage, dusted, and vacuumed. *Id.* at p. 85. Considering the requirements in the Regulations, and that Plaintiff's employment as a housekeeper occurred within the last fifteen years and lasted for a year, Butler had sufficient time to learn to do the work, especially considering the fact

that the position is classified as unskilled work.[12] *See id.* at p. 16. Thus, the ALJ did not err in finding that Plaintiff held her job as a housekeeper sufficiently long enough to be considered past relevant work.

"[I]n order to determine at step four whether a claimant is able to perform her past work, the ALJ must make a specific and substantial inquiry into the relevant physical and mental demands associated with the claimant's past work, and compare these demands to the claimant's residual capabilities." *Kerulo v. Apfel*, 1999 WL 813350, at *8 (S.D.N.Y. Oct. 7, 1999) (citations omitted); *see also* S.S.R. 82-61, 1982 WL 31387, *Titles II and XVI: Past Relevant Work–The Particular Job or the Occupation as Generally Performed* (S.S.A. 1982); S.S.R. 82-62, 1982 WL 31386, *Titles II and XVI: A Disability Claimant's Capacity to do Past Relevant Work, In General* (S.S.A. 1982). Once the demands of the claimant's past relevant work are ascertained, the ALJ must identify the claimant's ability to perform the specific work-related abilities on a function by function basis. Social Security Ruling 96-8p, 1996 WL 374184, at *1, *Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims* (S.S.A. 1996).

In Plaintiff's Disability Report, she stated that in her job as a housekeeper she had to stand and/or walk for four to six hours, climb for a half hour, stoop for three hours, kneel for one hour, crouch for one and one half hours, and handle, grab, or grasp for two to three hours. Tr. at p. 85. She also indicated the heaviest weight she lifted was fifty pounds and she frequently lifted ten pounds. *Id.* The medical evidence supports the finding made by the ALJ that Plaintiff had no exertional limitations, and Plaintiff does not contest this finding. *Id.* at p. 16 & *see generally* pp. 126-233.

Taking into account Plaintiff's testimony, the ALJ asked a vocational expert (VE) to assess

---

[12] Pursuant to 20 C.F.R. § 416.968(a), unskilled work is "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength."

whether Plaintiff could perform any of her past relevant work considering her mental impairments in conjunction with the mental demands of the job. The VE categorized Butler's past work as follows: the nurse's aide position was semi-skilled and constituted medium work, the laundry worker job was unskilled and constituted medium work, and the job as a housekeeper was unskilled and constituted light work. *Id.* at pp. 264-65. The ALJ then specifically asked the VE to base his opinion in consideration of Dr. Blumenthal's report and Plaintiff's GAF score of 50. *Id.* at p. 265. Salerno stated that Plaintiff could return to her work as a housekeeper because she would not need to be around the public. *Id.* at pp. 265-66. The ALJ questioned whether Butler's limitations, which cause her to be absent one or twice a month due to episodes of deterioration or decompensation, would impact her past relevant work. *Id.* at p. 266. The VE stated this should not have an effect on a housekeeping job. *Id.*

Based upon the medical information, Plaintiff's testimony, and the VE's testimony, the ALJ determined Plaintiff could perform her past work as a housekeeper. *Id.* at pp. 16-17. Substantial evidence exists in the record that the ALJ properly assessed Plaintiff's RFC and relevant past work experience. In light of the evidence supporting the ALJ's determination and his correct application of legal principles, we find that no error occurred.

### III. CONCLUSION

In light of the foregoing discussion, it is clear that in finding Butler was not disabled, the ALJ applied the correct legal standards and his factual findings were supported by substantial evidence. Thus, this Court recommends that decision be upheld.

**WHEREFORE**, it is hereby

**RECOMMENDED**, that the Commissioner's decision denying disability benefits be **AFFIRMED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date:   August 22, 2007
        Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge